1809.

GRASSER and wife *against* ECKART and wife.

*Saturday,*
*April 1st.*

THIS was an appeal from the decision of *Yeates* J. at a circuit court for *Lancaster* county, in *April* 1806.

The action was brought to recover a distributive share of the estate of *Frederick White*, intestate, from the defendants, who in the writ were styled his administrators. The declaration contained two counts. The *first* was a general *indebitatus assumpsit* for money had and received by *Eckart* and wife to the use of *Grasser* and wife in right of the wife; but, although the recital of the writ stated the defendants to have been attached as administrators, the count was against them personally. The *second* was a special count for the distributive share in question. It recited that *Frederick White*, a minor, and only child of *Frederick White* deceased, being possessed of personal property to the value of 3000*l.* died intestate and without issue, not having or leaving any brothers and sisters of the whole or half blood; by reason whereof the personal estate vested in the next of kin, &c. It then set out a title to a distributive share in the wife of *Grasser*, that the defendants took upon themselves the burden of administration, and that 3000*l.* beyond all debts and funeral expenses had come to their hands, by reason whereof they became liable to pay the plaintiff's share, which was averred to amount to 1000*l.*; and in consideration whereof they undertook and promised to pay. But the count did not state that they became liable to pay as administrators, or that they had assumed as administrators. The defendants pleaded *non assumpsit*, *plene administravit*, and *payment* with leave.

Upon the trial of the cause, a number of points were made, and afterwards elaborately argued upon the appeal; but as this court confined their opinion to two, it is unnecessary to give any other statement than such as is requisite to introduce these points.

*Where the residue of a testator's personal estate is not disposed of by his will, it is always a question of intention whether the executor is entitled to it beneficially, or as a trustee; and this question depends upon the sufficiency of the evidence by which the intention is made out. But the bare appointment of an executor, is prima facie evidence that it is given to him beneficially. A testator orders all his debts and funeral expenses to be paid, and gives his wife 700l. and the use of his real estate, until his only child, a son, then about*

five years old, shall be fifteen. He gives his son 15*l.*, a few specific legacies, and all his real estate; and then orders the residue of his personal estate, except a table and two stoves, *to be sold* by his executors at public sale, as soon as might be after his death, to the best advantage; and makes his wife and two friends executors. *Held*, that they take as trustees.

A count, charging man and wife upon a joint assumption in consideration of money had and received by them to the plaintiff's use, is bad, and cannot be amended under the arbitration law.

Judgment may be arrested for an objection on the face of the record, though it was not assigned at the time of filing the motion, or of entering an appeal.

The wife of *Eckart* was the widow of *Frederick White* the father, and one of his executors. The father died in 1798, leaving the intestate his only child about five years of age, who died before the 8th *July* 1800. On the 25th *November* 1800 these executors settled their account in the register's office, and acknowledged a balance of 2,434*l.* 2*s.* 10*d.* to remain in their hands, to be paid as the will directed. All the property came exclusively into the hands of the defendants in consequence of this settlement. By a second account filed the 27th *February* 1805, this balance was considerably reduced; and on the same day the defendants settled the administration account of the estate of *Frederick White* the son, in which they did not charge themselves with his share of the above balance, which was the surplus of his father's personal property not disposed of by his will, and which in fact was the principal part, if not the whole of the personal property, said to have been left by the son. The defendants contended that this surplus went to the executors of the father beneficially, and that the intestate took no part of it; and for this position they relied upon the will, the material clauses of which were these.

" As to my worldly estate wherewith it has pleased God to " bless me, I bequeath the same in the manner following," viz.

" First, I order, and it is my will, that all my just debts and " funeral expenses be paid and discharged out of my estate, " by my executors, as soon as conveniently may be after my " decease."

" Item, *I give and bequeath to my beloved wife* Susannah, *the* " *sum of* 700*l. lawful money of* Pennsylvania, *to her her heirs* " *and assigns forever.*" " I also order that my wife *Susannah* " may live on the place I now live on until my son arrives at " the age of fifteen years of age."

" Item, I give, devise, and bequeath, unto my only child " *Frederick White,* all the land and real estate I am now possessed of, here or elsewhere, to hold to him his heirs and assigns forever. I also give and bequeath unto my said son, " *my round top chest and all my books*, (except my account " books) *and my silver watch, and my silver shoe and knee buc-* " *kles, twelve new pewter plates, and fifteen pounds in hard cash* " *to be locked in said chest, and to remain there until he is of a* " *sufficient age to use them, and also one horse creature, and* " *one forty gallon still.*"

"Item, I give and bequeath unto *Frederick Hoofman* 20*l.* "without interest, that I lent to the widow *Groanbaugh*, to him "his heirs and assigns."

"*It is my will, and I order that all the* RESIDUE *and* REMAIN- "DER *of my personal estate* (EXCEPT MY DINING TABLE AND "TWO STOVES) *shall be sold by public sale by my executors or* "*the survivors of them, as soon as may be after my decease*, TO "THE BEST ADVANTAGE."

1809.<br>―――――<br>GRASSER<br><i>v.</i><br>ECKART.

He then made his wife executrix, and two of his friends executors of the will, and dated it on the 17th *March* 1798.

His Honour charged the jury upon this head against the defendants; giving it as his opinion, that the will furnished strong internal evidence, that *White* the father did not intend the residue of his personal estate to go to his executors beneficially; and that in cases like this, it was always a question of intention. The jury accordingly found for the plaintiffs, upon the *first* count in the declaration.

The defendants moved for a new trial, which was overruled; and also in arrest of judgment for a misjoinder of counts in the declaration, the *first* charging the defendants personally, and the *second* in their representative capacity as administrators. This also was overruled by his Honour, and the defendants entered their appeal.

*Hopkins*, for the defendants, went fully into all the objections urged below. But it is only material to give the substance of his argument upon the right of the executors under the will and upon the defects of the declaration. Upon the first question he argued, that the executors took the residue beneficially. By law the appointment of an executor vests in him all the personal estate of the testator; and it belongs to him after payment of debts and funeral expenses, not as a compensation, but as a bounty. It is a fundamental presumption of law that the appointment of executors is a *gift* to them of what is undisposed of; and although equity converts them into trustees, where it is necessarily collected from the will that the testator merely intended them the office, 2 *Fonbl.* 131. yet the rule laid down by lord *Thurlow* in *Bowker* v. *Hunter*, (*a*) is, that the executors shall take beneficially, "unless there is an *irresistible* inference to the contrary." In the present case, one of the execu-

(*a*) 1 *Bro. Cha.* 329.

1809.

GRASSER
v.
ECKART

tors, the wife, has a legacy, but the others not; it there-fore makes no impression on the case; for it is undeni-ably settled, that a legacy to one only of two or more ex-ecutors, shall exclude neither from the surplus, because the testator might intend to such one a preference *pro tanto: Far-rington* v. *Knightly* (a). The question then comes to this, whether there is an irresistible inference, or, as it is stated in *Clennell* v. *Lewthwaite*, (b) a *strong and violent presumption* in the present case, that the testator intended his executors to be trustees for the next of kin; if there is not, then as in *England*, so in this state, according to *Boudinot* v. *Bradford*, (c) they take it beneficially; and there must be a new trial. Upon the face of the will, there is no such intention to be found. The son was the only object to interfere with the executors. He takes the whole real estate of the testator, which was of great value; he also takes certain specific legacies, and a small money legacy, which it would have been absurd to give him, and to lock up in his chest, were he to come in for a large portion of the sur-plus. The direction to sell, though it was used below as an argument against the defendants, is in their favour. In the first place, two stoves and a dining table are excepted from the re-sidue, in compliance with a known custom among the Germans, to reserve these articles for the use of their house, and to go with it to the heir. It shews, in the same manner as an ex-ception proves the rule, that the son was to have nothing more. In the next place, the residue to be sold was that which re-mained after the payment of legacies; the design was therefore to create a fund for the payment of debts, which was the best way to meet them; and a division of the surplus of that fund in money, among his executors, was the most certain preven-tive of disputes, and is a confirmation of the principle of law, that they were objects of his bounty, since he thus consulted their interest.

In arrest of judgment there are two objections to the decla-ration. 1. A misjoinder of counts. The first is in the personal, and the second in the representative capacity. The plea of *plene administravit* cannot be pleaded to both; and the same judgment cannot be rendered upon both. *Jennings* v. *Newman*. (d) Nor is it cured by taking a verdict upon one count. *Bage*

(a) 1 P. Wms. 549. Cox's note.          (c) 2 Dall. 268.

(b) 2 Ves. jr. 471.                      (d) 4 D. & E. 347.

v. *Bromuel.* (*a*) 2. A misjoinder of persons plaintiffs. Where the wife is the meritorious cause of action, she may join with the husband, and not otherwise. Now upon the general money count, nothing of this appears, whatever may be the fact as to the second. It is therefore bad; *Bidgood* v. *Way and wife* (*b*), *Rose and wife* v. *Bowler;* (*c*) and it may be alleged in arrest of judgment, or assigned for error. *Brigden* v. *Parkes.* (*d*) There is also a misjoinder of defendants. The first count charges man and wife personally, with having jointly received money to the use of the plaintiffs, and jointly assumed to pay it; which cannot be. A married woman can make no contract; and all the preceding cases against joining her as plaintiff, hold *a fortiori* against joining her as defendant.

*C. Smith* and *Tilghman* for the plaintiffs. It is certainly questionable whether in *Pennsylvania* executors have ever taken the surplus beneficially. In *England* the law was settled when personal property was of little amount; and equity has uniformly laboured to get rid of it. It was settled too under the influence of a principle, that executors were not entitled to compensation for executing the trust; and hence it has become a standing rule in equity, that a legacy to an executor, or even to one of two executors, *for care and trouble,* makes the surplus a trust for the next kin. The immemorial practice of the register's office in this state to make an allowance to executors for care and trouble, is equivalent to a legacy. The allowance is matter of right; it is supported by the authority of an uninterrupted usage; it has often been recognised by the courts; it is known by the people, and presumptively in their view at the time of making their wills; and is therefore a sufficient ground for arguing that the *English* rule has never been adopted here. Certainly there is as much reason to presume an intention against the executors from such an extraneous circumstance, as from the same circumstance in effect, appearing upon the will.* The point has not been decided the other way in *Pennsylvania.*

(*a*) 3 *Lev.* 99.   (*c*) 1 *H. Bl.* 108
(*b*) 2 *W. Bl.* 1236.   (*d*) 2 *Bos. & Pull.* 424.

* This point was elaborately argued during the present term in *Wilson* v. *Wilson,* where it appeared necessarily to require the opinion of the court, and is now under advisement. But the question can rarely arise hereafter, as an act of assembly of 7th *April* 1807, makes the executors trustees in all cases where persons dying after the act leave a last will in which the residue is not disposed of.

*[margin]* 1809. GRASSER v. ECKART.

1809.
───────
GRASSER
v.
ECKART.

What is given as the judgment of the court in *Boudinot* v. *Bradford*, was merely the sudden opinion of the chief justice, without argument, and without confirmation by the judges. [SMITH J. I took very full notes of that case; and they contain nothing in relation to the point said to have been decided. It certainly was not the opinion of the court. YEATES J. The opinion attributed to the court, I recollect, fell from the chief justice; it was a sudden answer to a point made by Mr. *Ingersoll;* but there was no decision of the kind by the court.] What however is the rule of equity in *England?* Lord *Thurlow* has said there must be *an irresistible inference* to bar the executor. His ardent mind prompted him to use too strong a phrase. No case requires such an inference; a plain intention will disinherit the heir. The expression is accordingly softened in subsequent decrees. In *Clennel* v. *Lewthwaite,* (a) the master of the rolls adverts to *Bowker* v. *Hunter,* in which case he says lord *Thurlow is made to say* it must be an irresistible inference, which is not the rule, but it must be a *strong and violent presumption;* and in *Dicks* v. *Lambert* (b) the same master of the rolls asserts the rule that the executor is entitled " unless a *reasonable* "*ground* appears upon the will, or *as I see I stated* in *Clennel* " v. *Lewthwaite,* a strong and violent presumption" to the contrary; thereby shewing an inclination to soften his former expression, still much weaker than lord *Thurlow's.* The true rule is given in *Urquhart* v. *King,* (c) " that in equity it is al- " ways a question of intention." What was the intention here? The widow is provided for; she has a large legacy, and the realty until the son is fifteen. This son was the only child. He has a few pewter plates, and 15*l.* locked up in his trunk; and if he takes no part of the surplus, he has not a shilling to educate or to feed him from five years of age to fifteen, nor any thing to stock his estate, that he may enjoy it when he gets it. Here is violent presumption, if it be necessary. But the executors moreover are ordered to sell the residue; not what remains after payment of legacies merely, but after debts and funeral expenses, all which are first provided for in the will. Why then are they to sell, and at *public sale, as soon as possible, and to the best advantage?* To take it according to the defendant's argument, the testator is guilty of absurdity in every line. He takes the control of the property from those who alone are to enjoy it; he

(a) 2 *Ves. jr.* 471.        (b) 4 *Ves. jr.* 729.        (c) 7 *Ves. jr.* 228.

commands a public sale, whether they choose to reserve parts or not, and he enjoins it to be made to the best advantage, lest their own interest should not prompt them to sufficient care. But if on the other hand, it is admitted that he had merely the natural anxiety of a parent for an infant son, and that he was desirous for his use to convert perishable or unproductive goods, into a fund to maintain and educate him, and finally to stock his land, the whole is reasonable and proper. The exception of the stoves and dining table in fact seals this construction, and makes it irresistible. If the whole goes to the executors, so do the parts. It is however conceded, that the stoves and table go to the son; and that he was intended to take them for his house. But how is this to be reconciled with any other position, than that the executors were to take every thing as trustees? For to take part beneficially and part as trustees is in conformity with no rule in existence.

The *first* objection in arrest of judgment is obviated by the verdict, which is upon the first count; the second therefore goes for nothing; and so seems to be the law from the arguments and judgment of the court in *Rose* v. *Bowler.* In modern times judges have gone very far to support verdicts, and have often dissented from the doctrine that prevailed at the time of *Bage* v. *Bromuel* from *Levinz*, which case is evidently not relied upon by *Serjeant Williams*, though he cites it in his note to *Saunders.* (*a*) The objection is however obviated by another consideration, that both counts charge the defendants personally. The *second* objection was not filed below, and it is contrary to a rule of the court now to admit it. *Reg.* 19. *Circuit Court.* It would tend to surprise, and would enable counsel to throw out a lure, by assigning a flimsy objection, and concealing the real point until the argument. But it is not without an answer. A count upon a promise *to* man and wife is not bad. A bond may be given to both, and he may either join her, or refuse as to her, and bring the action alone. *Beaver* v. *Lane* (*b*), *Aleberry* v. *Walby* (*c*). *A fortiori* in this case where the cause of action survives to the wife. It does not depend upon the wife's being the meritorious consideration; for even where a parol promise is made to the wife during coverture, the husband may make it good by agreement, and join with her in *assumpsit*. *Prat* and

1809.

GRASSER
*v.*
ECKART.

(*a*) 2 *Saund.* 118.　　(*b*) 2 *Mod.* 217.　　(*c*) 1 *Stra.* 230.

1809.

GRASSER
v.
ECKART.

*wife* v. *Taylor*. (*a*) This being after verdict and upon an appeal, the court will support the declaration by every reasonable intendment. The objection to a promise *by* man and wife is more formidable. It is generally true at law that a married woman cannot promise. But as we have no court of chancery, every thing that could support the promise in equity ought to be intended; and as in equity the promise of a *feme covert* in respect to her separate estate is enforced, so may be the rule at law in this state, and the intendment in the present case; and the judgment may be so limited as to affect her separate estate, and the estate and person of her husband; as in *Hulme* v. *Tenant* and *wife*. (*b*) At all events it is submitted whether the count may not be amended under the arbitration law, which seems to embrace every defect of form that can be imagined. 7 *St. Laws* 562. *sec.* 6.

*Ingersoll*, in reply, admitted that the right of the executors to the surplus was a question of intention upon the face of the will; but he contended that it must be an explicit intention, and not merely presumptive, which could never rebut the presumption of law in their favour. He said that he did not recollect the general question of their right ever to have been judicially mentioned in *Pennsylvania* except in *Boudinot* v. *Bradford*, where the chief justice stated the law, as is mentioned in 2 *Dallas*, without any dissent by the other members of the court.

The second objection in arrest of judgment, he said, had been given up, or at least opposed only upon the ground that it had not been assigned below. But that argument would go to demand a judgment manifestly against law, which no rule should induce the court to pronounce, especially as they now sat in the last resort. Rules are made to facilitate business and not to produce injustice; and though a rule equally strict with the one cited, requires that exceptions to reports of referees be filed in four days, yet exceptions upon the face of the record are always heard without being filed, *Buckley* v. *Dunant*, (*c*) and in *Spafford* v. *Gallagher's Executors*, not reported, the court permitted exceptions to be added after the four days. The arbitration law cures only defects in form, and permits amendments before and at the trial. This is a defect in substance and a

(*a*) *Cro. Eliz.* 61.          (*b*) 1 *Bro. Cha.* 15.          (*c*) 1 *Dall.* 129.

verdict has passed. To strike out the name of the wife is to alter the nature of the action, and to leave it in is to expose her to execution; for it is impossible that there can be any presumption of a separate estate, when all the facts are before the court, having been heard upon a motion for a new trial.

TILGHMAN C. J. delivered the following opinion for himself and the late Mr. Justice *Smith*, who had perused it after it was drawn up by the Chief Justice, and accorded with it throughout.

This case comes before the court on an appeal from the circuit court of *Lancaster* county. It is an action on the case for the recovery of a distributive share of the personal estate of *F. White*, claimed by the plaintiffs, *Grasser* and wife, in right of the wife. In the writ the defendants are named administrators of *F. White*. The declaration contains *two* counts. The *first* count is against the defendants, not *styling them administrators*, for money had and received by them for the use of the plaintiffs *in right of the wife*. The *second* count is special; it sets forth the pedigree of the family of *White*, and deduces to the plaintiffs, *in right of the wife*, a title to a distributive share of the personal estate of *F. White*. The verdict for the plaintiffs was taken on the *first* count.

A variety of points have been made, and elaborately argued, some of which apply to the motion for a new trial, and others to the motion in arrest of judgment. We consider it unnecessary to give an opinion on any of the points urged in favour of a new trial, but *one*, which is on the merits of the plaintiffs' claim; and by which, if the defendants are right, the plaintiffs are barred, not only in this action, but in any other which may be brought. The point to which I allude, is this; whether or no the executors of the will of *Frederick White* the elder, the father of *F. White* the *intestate*, under whom the plaintiffs claim, took the surplus of the personal estate not disposed of by the will, for their *own benefit*, or as *trustees* for the next of kin. In the discussion of this point, the counsel for the defendants, before they considered the intent of the testator as it appeared by his will, introduced a preliminary question, viz. whether, at the time of the death of *Frederick White* the elder, by the law of *Pennsylvania*, the appointment of an executor

GRASSER
v.
ECKART.

1809.

amounted to a gift of the personal estate as it does in *England.* We shall give no opinion on this question, as our opinion will be founded on the will. But I think it proper to mention, that we do not consider the point as ever having been judicially decided, although certainly the opinion thrown out by C. J. *M'Kean*, in 2 *Dall.* 268, is entitled to great consideration. That opinion was not delivered by the court, but by the chief justice; nor was there any argument upon it. It was not before the court for decision; and my brother *Smith*, who has a very full note of that case, has examined it, and finds no mention of any such decision. Our legislature have lately, in my opinion very wisely, established the law, different from that which prevails in England; for I am satisfied, that not one man in ten supposed, when he appointed an executor, that he thereby impliedly made him a gift of all his personal estate not particularly disposed of. Taking for granted then at present, that our law was the same as the *English* when this will was made, let us see what is to be found in the will. The testator was possessed of a considerable real estate, and a personal estate amounting to upwards of 1800*l.* clear of debt. He had a wife, and but one child, a son of about five or six years of age. To his wife, who was one of his executors, he gave a legacy of 700*l.*, and his whole real estate until his son attained the age of fifteen; he gave her besides, some specific legacies. To his son he gave some trifling legacies in the nature of tokens of remembrance, his books, his shoe and knee buckles, some pewter plates, a round topped chest, and 15*l.* in cash, all to be locked up in the chest till his son was of a sufficient age to use them; he also gave him a horse and a still. To one *Frederick Hoofman* he gave 20*l.*; and he then directs, " that all the residue or remainder of his per- " sonal estate (except his dining table and two stoves) should " be *sold* by *public sale*, by his executors or the survivors of " them, as soon as might be after his decease, *to the best ad-* " *vantage.*"

Although by the law of *England* the executor takes the undisposed surplus for his own benefit, yet the courts have certainly availed themselves of all reasonable opportunities of getting over this rule, which was established at a time when personal estates were generally not of much value. They have adopted this principle, that where there are dispositions in the will which appear inconsistent with an intent that the execu-

tor should take the surplus for his own benefit, he shall take as a trustee for the next of kin. For instance, where a *legacy* is given to the executor; for why should he have a legacy, if it was meant that he should have the whole? Cases have been cited to shew the opinions of different judges as to the principle on which wills should be construed. In *Bowker & al. v. Hunter & al.* 1 *Bro. Cas. in Ch.* 330. lord *Thurlow* lays down the rule, that the executor shall take the residue unless there is an *irresistible inference* to the contrary. In *Dicks* v. *Lambert*, 4 *Ves. jr.* 729, the expressions of the master of the rolls are, unless " *a reasonable ground*" appears upon the will. " *A strong* " *and violent presumption*" are the words used by the master of the rolls in *Clennell* v. *Lewthwaite*, 2 *Ves. jr.* 471. These are strong expressions, but after all, we are not to be governed by words more or less strong, which different judges, or even the same judge at different times, will use upon the same subject; but upon the reason and principle on which their opinions are founded. Indeed we do not receive cases adjudged in *England* since our revolution, as any *authority;* we only regard them so far as they appear reasonable. I agree with the master of the rolls, who declared in *Urquhart* v. *King*, 7 *Ves. jr.* 228, that in equity " it is always a question of *intention*, whether " the executor is entitled *beneficially* or as a trustee; and this " question depends upon the sufficiency of the evidence by " which the intention is made out." Here is a *principle* by which we may conduct ourselves. Now, so far as evidence is derived from the will itself, the only rational way of coming at the truth is to give a fair and candid construction to the whole will, and determine whether there is ground sufficient to satisfy an impartial mind, that the testator did not intend the executor to take for his own benefit; for it must not be forgotten that the bare appointment of an executor is *prima facie* evidence that the personal estate is given to him beneficially.

In the will now under consideration, the testator provided amply for his widow; and amply for his child after he attained the age of fifteen. But if the executors take the residue for their own use, the child is totally unprovided for till the age of fifteen. This is an intention not very probable in the case of an infant child. But if the matter rested here, I should not think the evidence sufficiently strong to convert the executors into trustees. I rely on the direction given to the executors *to sell.*

1809.

GRASSER
*v.*
ECKART.

For what purpose were they directed to sell, if the property was to be their own? And not only to sell, but at *public sale*, and to the *best advantage?* I can see very good reasons for this precaution, in the mind of a parent anxious to secure the estate of a helpless child; but no reason at all, if the intent was to give it to the executors. It would not only be useless, but troublesome and expensive, to the persons who were the objects of his bounty, and very probably contrary to their wishes. The answer given by the defendant's counsel, that it was proper to create a fund for the payment of debts, is not satisfactory; for it is the residue *after debts paid*, that he directs to be sold. Besides they would have had power to sell for payment of debts without any direction, if such sale was necessary, which does not appear. Why were the dining table and two stoves excepted from the sale? Was it not because the testator supposed that they would be kept in the house for his child? Yet he has not given them expressly to the child. How then was the child to have them, but under the intention of the testator that the executors should take nothing but as trustees? For if they took beneficially, they would take these articles as well as every thing else not particularly disposed of. My mind is fully satisfied from the whole of the will, that the residue of the personal estate was not intended for the benefit of the executors.

Of the several reasons urged in arrest of judgment, we shall give our opinion but upon one, which we think decisive, although it was never mentioned before the judge who tried the cause in the circuit court, and of course he has given no opinion upon it. The defendants, man and wife, are jointly charged upon an assumption made by them to the plaintiffs in consideration of money had and received by *them* for the use of the plaintiffs. Here is an attempt to charge a married woman on a contract made by her jointly with her husband during the coverture. This is not warranted by any precedent or principle that I have heard of. A married woman can make no contract. The plaintiff's counsel have indeed candidly conceded that this count cannot be supported, unless the court should intend that the wife had a separate estate, and had contracted this debt on the credit of such estate. As we have no court of chancery, they suppose that this court would be warranted in entering a judgment *specially*, so as to

effect the purpose which might be more conveniently and directly done in a court of chancery. Without inquiring whether we have such power, we are very clear that we have no ground on this record for making the required presumption. There is nothing which indicates that the wife had any separate estate, or that she made this contract upon her private and separate account. We are therefore of opinion, that upon the face of the declaration there is no cause of action against the wife.

But it is said, this defect is cured by the act " to regulate " arbitrations and proceedings in courts of justice," passed 21st of *March* 1806, *sec.* 6. 7 *St. Laws* 562. The great object of this law was to prevent the *merits* of a cause from being sacrificed to *form*. The court are authorized to go great lengths in amendments previous to and even during the trial. This is right; and I will add that we shall always feel disposed to go the full length of the court's lawful authority in supporting the verdicts of juries after a trial of the merits. But the defect in the present instance is matter of *substance*. It is a substantial injury to charge a married woman with money received by herself and her husband, in the manner set forth in this declaration.

It only remains to take notice of one more point made by the plaintiff's counsel. They say the court should not attend to this error, because it was not assigned by the defendant when he entered his appeal. I think this would be exercising a strictness too severe. The court have a right, and perhaps, where injustice is like to take place, are *bound in duty* to see that an erroneous judgment is not entered, although it has not been assigned as an error. We know the hurry in which business is unavoidably transacted in the circuit courts. The most industrious counsel will often make omissions; and now that this court is the court of the *last resort*, we think they should be particularly cautious not to cut a party off from a *substantial* defence, although we trust they will never give encouragement to *captious* objections.

Upon the whole of this case, our opinion is that the judgment must be arrested.

YEATES J. Upon most of the points argued, this case is an appeal from my decision in the circuit court, and therefore I give no opinion here upon them. But the ground upon which

1809.

GRASSER

*v.*

ECKART.

the court think the judgment should be arrested is a new one, and I need only say that I agree with them it is decisive.

BRACKENRIDGE J. concurred with the Chief Justice.

Judgment arrested.