The opinion of the eourt was delivered by
Til cum an, C. J.
The counsel for the plaintiffs in error have suggested diminution in the record, and moved the court for a certiorari, to be directed to Charles Smith, Esq. late judge of the District Court for the city and county of Lancaster, commanding him to return certain bills of exceptions taken by the defendants, when the cause was tried in the District Court, before the said Charles Smith, Esq., with sundry papers appertaining to the said bills of exceptions. This case is attended with very peculiar circumstances. The bills of exceptions are in court, but it appears they were delivered to the prothonotary a considerable time *87 after the record was returned, so that they have not been certified by the District Court, to be part of the record. The counsel for the defendants in error, are desirous of proceeding to the argument of the cause, throwing the bills of exceptions out of the question. But would this be doing justice? We have sufficient reason to suppose, that these bills were regularly taken, though not regularly returned, because we have them before our eyes, under the hand and seal of the judge. What is to be done, then? Has the law made no provision for a case, where a record is in the hands of a judge whose commission has expired? It has; and the remedy is by certiorari. It is said, in 4 Vin. 346. (title, Certiorari, E. 1.) that, where a justice is discharged, or his authority ceases, he cannot certify a warrant in his hands, without a certiorari. For this, Viner cites, Br. Record, 64, and 8 H. 4, 5. Hawkins, in his Pleas of the Crown, book 2d. ch. 27, sect. 44, p. 290, lays down the law on this subject, as follows: “The executors or administrators of a judge can in no case bring in a record, without a certiorari to authorize them to do it. And it seems to be the stronger opinion, that neither a justice, who is out of commission at the time, nor one who has been out of commission, but is afterwards restored, can certify any record, without a writ of certiorari.” The commission of Judge Smith having expired, since the trial of the cause in the court in which he presided, there can be no doubt that a certiorari directed to him is the regular method of bringing the record before us. But this is opposed by the counsel for the defendants in error, on the ground of laches in their adversary. And this argument has greater weight, from the consideration, that this is an action of dower, in which the demandants may lose every thing, if the wife should happen to die before judgment. It is in the discretion of this court, to allow the writ or not, and the situation of the demandants may be a reason for imposing terms on the plaintiffs in error, to guard against the accident of death. It is reasonable, that in consideration of the delay which will be occasioned by a certiorari, the plaintiffs in error should consent, that in ease the judgment be affirmed, it be entered as of May term, 1824; and in case of the death of Henrietta, the wife of George Green, the demandant shall be entitled to damages from the same term, to the time of her death That consent being given, it is my opinion, that the certiorari should issue, a proper suggestion being placed on the record. It is to be considered, that other cases of a similar nature will probably occur; and it must not be supposed for a moment, that, where counsel have done every thing which the law required, by taking an exception, and having it immediately noted by the judge, though not reduced to form, they should be subject to the loss of their exception, by the death of the judge, or expiration of his commission, before he has signed and sealed the bill. We cannot avoid taking notice of the situation of the judges of the Courts of Common Pleas, ami the ex *88 treme difficulty, if not impossibility, of going on with business, if in every instance the (.rial were to be suspended, till a formal bill of exceptions should be drawn up, and sealed. We know the practice to be, to note the exception at the time it is taken, and reduce the bill to form afterwards. Great allowance must be made for the judges; who, according to the fashion of the day, are literally overwhelmed with a multitude of exceptions; and some allowance is due to the counsel for the plaintiffs in error, in this case, who took for granted, that the bills of exceptions, which had been in the hands of the judge, had been completed, and sent up with the record. • Upon the whole, then, it appears to me, that justice will be done to all parties, by issuing the certiorari on the terms which I have mentioned.
Certiorari awarded.
On the return of the certiorari, with the bills of exceptions, to this term, the case appeared to be as follows:
It was an action of dower, brought by George Green, and Henrietta, his wife, who was the wife of Bartram Galbraith, deceased, against Bartram Galbraith, James Galbraith, and Juliet Galbraith, grandchildren of the said Bartram, first named, with notice to James Hopkins, Esq., guardian of the said Bar-tram, Samuel White, guardian of the said James, Dr. Abraham Carpenter, guardian of the said Juliet, and Francis Hawthorn, the tenant in possession, to recover the third part of a plantation, in Lancaster county, of which the said Bartram died seised, and in the'court below a verdict and judgment were rendered in favour of the plaintiffs below, the defendants in error. ''
The defendants below were the children of Samuel S. Galbraith deceased, son of B. Galbraith, the elder, and claimed under their father, to whom, as they alleged, the tract of land in which the plaintiffs claimed dower, was given by the said B. Galbraith, the elder, before his marriage with the plaintiff’s wife, now the wife of George Green, so that the said B. Galbraith was never seised during his marriage with Mrs. Green of any estate from which she could derive a right of dower. This gift was said to be by parol, accompanied with possession. That Samuel S. Galbraith went into possession before his father’s marriage to the plaintiff, and continued in possession until his death, were facts beyond doubt; but the gift of an estate in fee simple to him was denied, and whether there was such a gift, was the matter in dispute. Many witnesses were examined by the defendants, to prove that B. Galbraith had, at various times, both before and after his marriage, declared, that he had given the land to his son Samxiel; of which the plaintiffs offered to prove “ the déclarations of the said B. Galbraith, made to different persons, behind the back, and *89 without the knowledge of his son Samuel, before his marriage with the plaintiff, and when he had it in contemplation, and after his said marriage, that he had not given the land to his son Saj?i«ef.”C.To this evidence the defendants objected, but the court admitted it, on which, an exception was taken by the defendants to their opinion.
Jenkins and Hopkins, for the plaintiffs in error.
1. It is a principle, that a man who has conveyed his land shall not be permitted to destroy his conveyance by his own declarations. Therefore, although his declarations are evidence against him, yet they are not evidence for him, unless so far as they con *90 stitute part of a conversation of which the other party has given evidence. These principles are settled by repeated decisions. Seiler v. Eckart, 1 Binn. 378. Packer’s Lessee v. Gonzalus, 1 Serg. & Rawle, 526. Bossler v. Neisly, 2 Serg. & Rawle, 352. Blight v. Ashley, 1 Pet. 15. M'Peake v. Hutchinson, 5 Serg. & Rawle, 295.
*89 The defendants gave in evidence a copy of the record of an ejectment, brought in November, 1817, in the Court of Common Pleas of Lancaster county, for this land, against Samuel S. Galbraith, . by his brothers and sisters, and George Green and wife, on which the defendant claimed under the above-mentioned parol gift from his father. The ejectment it appeared was referred to arbitrators, who awarded that the father of the defendant gave the lands in dispute to the defendant, in fee simple, and that they belonged to him, but the defendant should release all claims he had on the estate, real or personal, of his father. The defendant then offered in evidence the release executed pursuant to the award, which, after reciting that, “ in consideration of the said land, so advanced, and settled on him by his late father, in his life time, in fee simple, and to repel such injurious imputations,” he remised, &c. to the other heirs, &c. all his right in his father’s estate, real or personal. To this release the plaintiffs objected, and the court rejected it, and sealed another bill of exceptions.
The defendants requested the court below to charge the jury, that the action could not be maintained, because, if the husband dies intestate, and seised of land as alleged in the declaration, the only remedy of the widow in this commonwealth is under the intestate laws, and not by action of dower, at common law. But the court gave it to the jury as their opinion, that the action was maintainable. -
The above points were assigned as errors, before the suggestion of diminution and award of a certiorari in this case, as well as the following, namely, that the writ was issued against four defendants, and the declaration, verdict, and judgment, were against three only. After the return of the certiorari, the plaintiffs in error assigned a fifth error, in the manner in which the verdict was taken, which was as follows: “The jury find for the plaintiffs, and also find ninety dollars per annum, damages, for the plaintiffs, to be calculated from the commencement of the suit,' amounting in the whole to three hundred and twenty-two dollars, fifty cents damages, and six cents coéts.” The error now assigned was, that this verdict did not find that the husband died seised of any land; nor the time when he died — nor the value of the land.
*90 2. The release ought to have been admitted in evidence, because it was part of the record of the action which had been given in evidence. That release recited no more than what the award of the arbitrators had said, namely, that B. Galbraith had given the land to his son in fee. Suppose the release had recited the whole, verbatim, it would have been very proper.
3. We contend, that, by the law of Pennsylvania, where a man dies intestate, and seised of land, his widow cannot support an action of dower. To permit an action of dower, would be to destroy the system established by the intestate laws, by which the share of the widow is defined and vested in her, and the mode of ascertaining and settling it determined, and it is to be in lieu of dower at common law. If the widow recovers her dower, the Orphans’ Court would have no power to order an inquisition and valuation for partition among the children. If it be said, that the particular circumstances of this case would at all events make it an exception to the general rule, because B. Galbraith did not die in possession of this land; we answer, that this is of no importance; the Orphans’ Court might order a valuation, and if none of the heirs would take it, a sale might be ordered. The widow might support an ejectment for her third, where there were no proceedings in the Orphans’ Court. All that was decided in Pringle v. Gaw, 5 Serg. & Rawle, 536, was, that the widow and children cannot recover on a joint demise in ejectment.
4. The fourth error it is important to have decided, for the establishment of a rule of practice, as to persons brought into court on notice.
5. The verdict is erroneous. Damages are recoverable in dower only where the husband died seised, and this must be found by the jury, and also what estate he died seised of. B.N.P. 116. 2 Johns. Rep. 119. Damages are given by the statute of Merton.
Rogers and Buchanan, contra.
1. The defendants first assume, that B. Galbraith gave the land to his son, and then object to his declarations, because they were subsequent to the gift; but that is the matter in dispute. The judge charged the jury, that if they were satisfied a parol gift had been made, they were to pay no regard to these subsequent declarations. The principles decided we do not dispute, but the present rests on its own circumstances; it is sui generis. The widow does not claim under her husband; she claims bylaw; she has an inchoate right of dower immediately on marriage. B. Galbraith is rather to be considered as a witness, whose contradictory declarations *91 may be given in evidence. The widow ought not to be injured by any contradictory declarations of her husband, subsequent to marriage. We proved title in B. Galbraith, before his marriage, and the defendants set up this parol gift. There is another thing on which we rely; we insisted in the court below, that a motion for a new trial and argument would be a waiver of the bills of exceptions. This mode of proceeding in both ways makes great delay. In 2 Bl. Rep. 929, it is said, that the court below will not entertain a motion for a new trial,.in a cause where a bill of exceptions nijf been taken. v
2. If there was error here, it was not in rejecting the release, but in admitting any part of the record. Suppose the plaintiffs could not recover in ejectment, that is no reason why they could not recover in dower. Though the widow had joined, yet it has been decided, in Pringle v. Gaw, 5 Serg. & Rawle, 536, that she cannot support an ejectment for land in which she claims dower; nor can she join with the heirs in ejectment. The release offered in evidence contained things not necessary, nor required by the award; assertions in favour of the defendant’s own title, to be made use of on some future occasion.
3. There is a seisin in fact and in law. B. Galbraith was seised in law, but not in fact, because his son Samuel had the possession. What could the plaintiffs do? We deny that the Orphans’ Court will order a partition and valuation of land, where the intestate is out of possession. Then, as the widow could not support an. ejectment, 'she had no remedy but a writ of dower. This court will not by implication take away a widow’s right to bring dower.
4. The court told the counsel they need not speak to this point.
5. On this error, we ask the court’s opinion on a preliminary point. This suit has been two years in this- court. Errors were assigned a year ago, May, 1824, vnot including this error, and when assigned on the 26th of October, 1824, it was too late. This record was perfected on the 11th of January, 1S25, by a return by the late Judge Smith. If the error be regularly assigned, it is not well founded. This court by special favour granted a certiorari, after errors were assigned, but permission was not given to assign this additional error, It is not founded on any fact not known when errors were first assigned. It has no merits, but is a mere technical error. But, supposing it regular, there is no foundation for it. Our practice is loose. The jury found damages, and the actual value, which must have been predicated on a finding that B. Galbraith died seised; because, unless he died sei.sed, no damages ought to have been found. They found for the plaintiffs generally. 1 Harr. Ent. 654. 1 Yeates, 152. 2 Yeates, 305.
In reply, it was said, the delay in -this cause had not been occasioned by the plaintiffs in error; but by the objection of-the other side to' the completion of the record. When the errors were first assigned, the record was not complete. The court, to prevent in *92 justice, will take notice of errors themselves. Grasser v. Eckart, 1 Binn. 575. Until the record is complete, the plaintiff cannot be called on to assign errors. 5 Co. 37. 2 Bac. Ab. Error.
The opinion of the court was delivered by
Tilghman, C. J.
Manwitnesses were examined by the defendants, to prove, that B. Galbraith had, at various times, both be~ fore and after his marriage, declared that he had given the land to his son Samuel; after which the plaintiffs offered to prove, “the declarations of the said B. Galbraith, made to different persons, behind the back, and without the knowledge of his son Samuel, before his marriage with the plaintiff, and when he had it in contemplation, and after his said marriage, that he had not given the land to his said son Samuel. ” To this evidence the defendants objected, but the court admitted it, on which, an exception was taken to their opinion. The declarations of B. Galbraith, that he had given the land to his son, were admitted without objection. And if, in the same conversation, he had made explanations, or counter declarations, they also would have been evidence; because, it is not fair, to take but part of what a man has said. But that was not the kind of evidence which was offered by the plaintiffs. As I understand the bill of exceptions, it was evidence of other, distinct declarations, made by the father, in the absence of the son. What a man says against his own interest, may be safely believed; but it is not safe to credit him, where he is advocating his interest. Upon this principle the rule of evidence is founded — a man’s confession, against himself, is evidence — but his declarations, in favour of his own interest, are not evidence. When B. Galbraith said that he had given the land to his son, he spoke against his own interest — but when he denied it, he spoke in his own favour. And there was particular cause for distrusting his declarations subsequent to his last marriage; because, then he had formed a new attachment, very likely to wean his affections from bis children. And his wants were increased, by the prospect of issue by his second wife. I am of opinion, however, that bis declarations in the absence of his son, that he had not given him the land, whether made before, or after, his last marriage, were not evidence.
There was a second bill of exceptions, to the admission in evidence of a release from Samuel S. Galbraith, deceased, father of the defendants, to the heirs and legal representatives of his father, of all his right to any part of his father’s real or personal estate. This release was given in pursuance of the award of arbitrators, made in an ejectment brought against the said Samuel S. Galbraith, by his brothers and sisters, for the tract of land now in dispute; in which Green and wife, the present plaintiffs, were joined as parties, and plaintiffs. The defendant in that ejectment claimed under the parol gift from his father, before mentioned. *93 The cause was submitted to arbitrate^, who made an award in favour of the defendant, but direeted-him to execute a release to the heirs his father. A release was accordingly executed, which was oWd in evidence by the d|ffltedantsy'¡and is the subject of this bifcf exceptions. It contaiáffp certartfrecitals, which were admitted'; not to be evidence, andJvas, therefore, offered without the recitals. But still the plaintiffs objected to it, because it contained an assertion, that the land claimed by the releasor, by parol gift from his father, had been advanced and settled on him by his father, in his lifetime, in fee simple. The court rejected the evidence, and I think, properly; because,, although the releasor was ordered by the arbitrators to execute'a release of all his right to any other lands of his father, it was by no means necessary to introduce this averment of a gift to himself^ nor had he a right, in this indirect way, to make evidence for himself. The defendants should have been permitted to show, that their father had executed a release, in pursuance of the award. ' So'much of the writing as was necessary to prove that, might have been read to the jury; or, if the plaintiffs would have confessed that a release was executed, that would have been sufficient, without showing the deed to the jury at-all. But, in the manner it was offered, my opinion is, that it was not evidence.
The assignment of the third error, has raised a question of considerable importance, viz. whether, by the law of Pennsylvania, a woman can support an action of dower, against a person who is in possession of land supposed to belong to the estate of her late husband, and claiming by title adverse to his heirs. When the husband has aliened the land in his life time, the right of the wife to support an action of dower is not questioned. But the counsel for the defendants have contended, that, whenever the land descended from the father to his heirs, our intestate laws take from the wife her right of dower at the common law, and give her in lieu-ofrit, either one-lhird of the land for her life, or, in case the estate will not conveniently admit of this partition, the interest for life, of one-third of the money at which the whole real estate shall be valued, on an appraisement to be made by order of the Orphans’ Court. My opinion will be confined to-the case before the court, where the husband; although he might have died seised in law, yet ^id not die in actual possession, of the land in which dower is claimed by the plaintiffs. I do not see how the Orphans’ Court, who are authorized to make partition between the widow and children of the intestate, could well proceed to a partition of land out of possession. Suppose the land did not admit of a division. It would then be the duty of the court to have it valued, and offer it at the valuation, first, to the eldest son, and if he- refused it, to the other, in succession. But what value could be fixed on land, out of the possession of the heirs, and held by another, claiming under a title adverse to the intestate? t In such case, what is to become *94 of the widow? It is said, she may bring an ejectment for the one-third to which she is entitled, or wait until the heirs have recovered the estate, in an ejectment brought by them. But it has been decided, that the widow cannot support an ejectment. Pringle v. Gaw, 5 Serg. & Rawle, 536. And she has no power to compel the heirs to bring an ejectment. She might be left to starve, then, although her husband’s title was good, and there would be no difficulty in recovering in an action of dower. It would require negative expressions in the act of assembly, to bar her of her action, under such circumstances. And I think, the general understanding has been, that she is not barred. Besides, the division between the widow and children, is a family affair, with which the defendants have nothing to do. They disclaim the family title, and hold in opposition to it. What is it to them, in what form of action the land is recovered against them? Suppose the heirs of the intestate should be willing, that the widow should prosecute her claim of dower at her own hazard, and her own expense. In that case, they would not petition the Orphans’ Court for a division under the act of assembly, and what right have the defendants to say, that they shall petition, and the widow shall proceed in neither way? Widows have always been deservedly the favourites of the law. Their necessitous and unprotected situation, has made it the matter of general policy, to facilitate the recovery of that portion of their husband’s estate to which they are entitled, on his death. The construction of the act of the 19th of April, 1794,' which is contended for by the counsel for the defendants, is unnecessarily severe; and being founded only on an inference drawn from the general scope and intention of the act, I am not for adopting it. It certainly is not sanctioned by any judicial decision, since the first enactment of our intestate laws, which have existed, with various modifications, for upwards of a century. On the contrary, I have no doubt that precedents may be found, of recoveries in dower, under similar circumstances; although we have not at this moment an opportunity of making a search into the records. I am of opinion, therefore, that it was rightly decided by the District Court, that, in the present case, an action of dower was the proper remedy.
The fourth error assigned in this case, is, that the writ was issued against/bt»' defendants, but the declaration, verdict, and judgment, were against three only. This court never reverses a judgment, for reasons merely technical, without great reluctance. The person who assigns a technical error, will therefore be held strictly to it. On examining the record, we .think this error is not supported in fact. The action was brought against three defendants, with notice to certain other persons, who were supposed to have an interest in the land, though not proper to be made defendants in the action. One of these persons was James Hawthorn, the tenant in possession. Probably he was tenant but for a year, or at least *95 not tenant of the freehold. But a writ of dower lies only against the tenant of the freehold. It might be proper, therefore, under our practice, to give notice of th.e action to Hawthorn, in order that he t&ight take measures, in connexion with the tenants of the freeholdjfio defend the title, though it would have been very improper to demand dower against him. The record does not state that he ever was admitted by the court, as a defendant. On the contrary, the whole proceedings show that he was not considered as a defendant. The count makes no demand against him, — no plea is put in by him. In the verdict and judgment there is no mention of,him. It is not true, therefore, that the declaration, verdict, and judgment have departed from the writ.
After the plaintiffs in error had assigned errors, they suggested a diminution of the record, and under the very particular circumstances-of the case, the court granted them the indulgence of a certiorari, to complete the record. Having availed themselves of this, they afterwards, without the permission of the court, assigned a fifth error, not founded on the merits of the case, but some supposed irregularity in taking, or entering, the verdict. Had the court been applied to, they would have refused permission to assign such an error, and therefore I consider it as a nullity. If the plaintiff in error, in his assignment, omits a substantial error, this court reserves to itself the right of taking notice of it, in order to prevent injustice. But that is a matter to be regulated by sound discretion. The plaintiff in error has no right to insist on any error which he has not assigned. Upon the whole, then, I am of opinion that there is error in the matter appearing in the first bill of exceptions, but in nothing else. The judgment is therefore to be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.