# SUPERIOR COURT.

LAWRENCE J. GOODALL agt. JAMES G. M'ADAM and PHŒBE
J. M'ADAM, his wife.

In an action against *husband and wife*, to charge the separate estate of the wife,
upon a note or bond signed by the husband and wife, the legal inference is,
that it was the *debt of the husband.* The legal conclusion is, that it could
not be the debt of the wife, she being incompetent to contract it.

In order to charge the separate estate of the wife, there must be something to
show that it was given for her benefit—that is, for the use of her separate
estate.

Where, in such case, the complaint asks relief only against the separate estate
of the wife—not against the husband—under § 275 of the Code, a judgment
for want of an answer could only be entered against the property of the wife—
none against the husband personally. ·

The case upon a *demurrer* by husband and wife to the whole complaint, may be
treated in the same manner, and then it is that the wife, with the husband, for
conformity, demurs that no cause of action is made against her property.

By the amendment of § 114 of the Code (in 1857) the necessity of a *next friend*
or *guardian* for a married woman is dispensed with in every case.

*New-York Special Term, April,* 1857.

DEMURRER to the complaint, that it does not state sufficient
facts to constitute a cause of action.

The complaint is as follows:—

" The above-named plaintiff, Lawrence J. Goodall, complains
against the defendants, James G. M'Adam and Phœbe J.
M'Adam, his wife, and says, that the said Phœbe J. M'Adam
was, on the first day of April, 1853, and ever since has been,
and still is, the lawful wife of the defendant, James G. M'Adam.

" That on the 20th day of November, 1854, the said defend-
ants, being indebted to the plaintiff in the sum of fourteen hun-
dred and forty dollars, made, executed and delivered to the
plaintiff their certain bond or obligation under their respective
hands and seals, bearing date the 20th day of November, 1854,
for the purpose of securing said indebtedness, whereby they
bound themselves unto the plaintiff in the penal sum of three

thousand dollars, to be paid to the plaintiff, his executors, administrators, or assigns, for which payment well and truly to be made, the said defendants, by said bond, bound themselves, their heirs, executors and administrators, jointly and severally.

" The said bond contained a condition, that if the said James G. M'Adam and Phœbe J. M'Adam, or either of them, their or either of their heirs, executors, or administrators, should well and truly pay, or cause to be paid, unto the said plaintiff, his executors, administrators, or assigns, the just and full sum of one thousand five hundred dollars within two years from the date of said bond, with lawful interest thereon semi-annually, till the same be paid, then the said obligation to be void, otherwise to remain in full force and virtue.

" That no part or portion of said bond, or the interest or any part thereof, has been paid; but there remains due and payable thereon, from said defendants to the plaintiff, the sum of fourteen hundred and forty dollars, with interest thereon since the date of said bond, to wit, the 20th day of November, 1854.

" That at the time aforesaid of the execution of said bond by the defendants, the defendant Phœbe J. M'Adam had, and ever since has had, and still has, a separate estate, consisting of certain lots of ground in the city of New-York, with the buildings and improvements thereon, which are hereinafter more particularly described, and of great value, and as this plaintiff is assured and believes of the value of fifteen thousand dollars. That she is, at the time of the commencement of this action, the owner thereof in her own right, and free from any ownership or control thereof by her said husband."

Then followed a description.

" The plaintiff demands judgment, that the said separate estate of the said defendant Phœbe J. M'Adam, wife of the said defendant James G. M'Adam, be charged with the payment of the debt so as aforesaid due and payable upon said bond, and that her separate estate aforesaid be applied to the payment of said debt and the costs of this action; that a receiver may be appointed in this action to take possession of the said separate estate of said Phœbe J. M'Adam, dispose of the same, and

satisfy said debt and costs out of the avails thereof, and for such other or further relief as the court may see fit to grant."

LAWRENCE J. GOODALL, *for plaintiff in person.*
JAMES G. M'ADAM, *in person, and for wife.*

HOFFMAN, Justice. The demurrer raises the question in a very simple form, whether a married woman binds her separate estate by merely joining in a bond with her husband?

It is not strictly correct to say that the engagement of a married woman to pay a debt connected even with her separate estate, creates a charge upon it. But it is an engagement which enables a court of equity to reach such estate, so as to enforce payment of the debt out of it. In other words, it is a debt which may pass into a restricted or qualified judgment.

The law in our state commenced with the cautious and protecting rule, that a married woman was only to be treated as a single woman in this respect, as far as the instrument which gave her separate property endued her with the power of an owner. Then follows the maxim sanctioned by the court of errors, that she was to be considered as absolute owner, except so far as expressly limited and restricted in the exercise of the ordinary rights of ownership.

Still the idea of a definite appropriation of the separate property pervaded the authorities.

The cases relating to Mrs. Dyett's trust estate carried the doctrine to the length of holding that the promissory note of a married woman's agent, given for supplies used for the separate estate, could be enforced against it. There was still the fact of an actual application of the creditor's property to her peculiar property, viz., that of her separate estate. (7 *Paige,* 1.)

It remains to see whether a note of her own, not connected with the trust estate is sufficient. It is not to be denied that in England it would be so. The decision of Lord BROUGHAM in *Murray* agt. *Barlee* (3 *Mylne & Keen,* 209) settled, that a promise of a married woman, contained in letters to her solicitor, to pay him for his services, without any reference to her

separate property, was sufficient to bind it. She had lived apart from her husband. The solicitor had filed a bill against her trustees and husband, by her next friend. They opposed a petition to the lord chancellor for a commission of lunacy, and defended a suit instituted against her for the purpose of charging her separate estate for necessaries supplied her.

The bill was against the husband and wife. The wife put in a separate demurrer to the whole bill. This was overruled. (4 *Simons*, 82.) The vice-chancellor (SHADWELL) decided the case upon the ground that the express promise to pay the demand was equivalent to a promise to pay it out of the separate property. A mere debt raising an implied assumpsit would not have sufficed.

The case came up afterwards on the proofs, and a decree was made for the plaintiff.

On appeal Lord BROUGHAM observed, that had a bond been given to the solicitor, it could not have been denied that the estate could be reached. He expressly held that if the married woman executes a bond, signs a note, or gives an acceptance, because these acts are nugatory if done without reference to the separate estate, she must be intended to have designed a charge on that estate. He was also of opinion that a mere general engagement, without a written instrument, is equally effectual.

This *decision* was adopted and followed by Lord COTTENHAM in *Owen* agt. *Dickinson*, (1 *Craig & Phillips*, 50.) A paper signed by the married woman, recognized a debt owing by her.

The same doctrine is found in *Stewart* agt. *Kirkinwall*, (3 *Mad. Rep.* 387;) *Bulpin* agt. *Clarke*, (17 *Vesey*, 365.)

In *Tullett* agt. *Armstrong*, (4 *Beavan*, 320,) subsequent to *Murray* agt. *Barlee*, a distinction was taken. The wife had joined her husband in an annuity deed, purporting in the recital that it was to secure it on her separate estate; but the husband alone conveyed the property, and alone covenanted. There was no engagement on her part to pay the annuity or to charge her property. She signed it with him. The master of the rolls said, "a married woman may bind her separate property without distinctly stating that she intends to do so. She may

enter into a bond, bill, promissory note, or other obligation, which, considering her state as a married woman, could only oe satisfied by means of her separate estate; and therefore the inference is conclusive that there was an intention on her part that such estate should be bound. Though Mrs. Armstrong was a party to the deed, there is nothing in it which shows, on her part, an intention to bind her separate estate; on the contrary, the conveyance and agreement is wholly on the side of her husband."

In *Vanderheyden* agt. *Mallary*, (1 *Com.* 462,) Judge JEWETT stated the rule to be, that a married woman could not bind herself personally, nor her separate estate, by any personal engagements. Thus far courts of law and equity act in concert; but courts of equity enable her to deal with such property as if she were a single woman. She may sell and incumber it; and every security executed thereon by her is to be deemed an appointment *pro tanto*. He says, "It is agreed there must be an *intention* to affect the separate estate. The fact that the debt has been contracted by the woman during coverture, either as a principal or a surety, for herself or for her husband, or jointly with him, seems ordinarily to be held *prima facie* evidence to charge her estate, without any proof or positive engagement to do so." (*Citing Story's Eq. Jur.* 1400.)

But the case decides, that though the debt was that of the wife before marriage, yet her separate property transferred to a third person by husband and wife after marriage, and retransferred as for her separate estate, could not be reached. There was no act indicating an intent or agreement to charge it. And further, it was so decided, although she had, with her husband, promised to pay it out of other funds.

The decree of the chancellor (3 *Barb.* 1) was reversed.

The case of *Yale* agt. *Dederer*, (21 *Barb.* 286—*special term*,) has carried the doctrine to probably its utmost limit. The wife signed the note in suit with her husband, for the purchase of cows. She owned certain farms. But it was found that there was not sufficient evidence to prove that the cows were used for the benefit of her estate as her own. The plaintiff had

Goodall agt. M'Adam and wife.

obtained a judgment against the husband, and execution was returned unsatisfied. The court say, "The fact that the debt has been contracted during coverture, either as principal or, surety for her husband, or jointly with him, seems to be held *prima facie* evidence to charge her separate estate." The action was sustained and a receiver appointed.

But, on the other hand, Vice-Chancellor SANDFORD, in *Curtis* agt. *Engel*, (2 *Sand. Ch. Rep.* 288,) held, that where the plaintiffs proceeded against the separate estate without showing any charge or appointment, they must show either that the debt was contracted for the benefit of her separate estate, or for her own benefit, upon the credit of the separate estate. The decisions in our own state had carried the doctrine to this extent only.

There is a class of cases in which the wife has united in mortgaging her separate property for the husband's debt. (*Neimcewicz* agt. *Gahn*, 3 *Paige*, 614; *Wheelright* agt. *Depeyster*, 4 *Edwards' Rep.* 232; *Fitch* agt. *Cotheal*, 2 *Sand. Rep.* 29; *Vartie* agt. *Underwood*, 18 *Barb.* 562.) In these cases the bond has been specifically pledged, but it becomes only security for payment of the husband's debt. He is first to be resorted to.

If the joint bond of husband and wife is given, and it is proven that the debt was contracted for the use of the wife, or her estate, that may be made liable without a pursuit of the co-obligor at law. (*Forrest* agt. *Robinson*, 1 *Porter's Rep.* 44.)

So a note given by both upon an admission that it was a mutual debt, and her written undertaking to pay it, was held sufficient. (*Clark* agt. *Makenna*, *Cheves' Ch. Cases*, 163.)

*Metcalf* agt. *Cook* (2 *Rh. Is. Rep.* 355) is a valuable case, in which the old doctrine of Chancellor KENT is held to be the law of Rhode Island. (*See Coon* agt. *Brook*, 21 *Barb.* 546.)

The rule that her promissory note, or obligation, as a personal engagement is wholly void, remains in full force. (*Edwards* agt. *Davies*, 16 *John. Rep.* 281; *Cobine* agt. *St. John*, 12 *How. Pr. Rep.* 334, *and cases; Coon* agt. *Brook*, 21 *Barb.* 547; *Dawson* agt. *Groves*, *Riley's Ch. Cases*, 219.)

In relation to the statutes of 1848 and 1849, I agree with the

Goodall agt. M'Adam and wife.

views expressed in the late case of *Colvin* agt. *Currier*, (22 *Barb*. 380,) that they are but the adoption of the equitable rules of a court of chancery, and applying these rules to all the property of the wife, whether legal or equitable. They were designed to take away the marital rights of the husband in respect to such property of the wife. It is true, the property is converted into a legal estate, but it is none the less a separate estate, independent of the husband. They do not allow her to make contracts, except in respect to such property, and do not allow her to be sued at law.

From this examination of the cases, I have come to the conclusion, that where there is nothing but a note or bond signed by the husband and wife, the legal inference is that it was the debt of the husband. The legal conclusion is, that it could not be the debt of the wife, she being incompetent to contract it. Then there must be something to show that it was given for her benefit; that is, for the use of her separate estate.

A point was raised by the plaintiff's counsel, that there could not be a joint demurrer, because the husband could be made liable, even as this complaint is framed. (*Marquat* agt. *Marquat*, 2 *Ker*. 342; *Brunskill* agt. *James*, 1 *id*. 294.)

But before the Code the misjoinder of husband could be taken advantage of by general demurrer. (*May* agt. *House and wife*, 2 *Chitty's Rep*. 697 ; *Graper* agt. *Eckart*, 1 *Binn*. 575.)

These decisions, however, are upon the ground that, under the former rule, if the action could not have been sustained against both, it could not be against either. This rule is changed by the Code.

In *Cobine* agt. *St. John and wife*, (12 *How. Pr. Rep*. 333,) such a demurrer was sustained, where the complaint set forth a note of the wife in which the husband had not joined.

And in *Colvin* agt. *Currier*, (22 *Barb. Rep*. 372,) a demurrer was taken by the wife (the husband being a party) to a complaint, setting forth work done and materials furnished by a carpenter upon her separate estate, and praying judgment against that only. This demurrer was overruled. There was

an allegation that the husband had joined in the employment, and promise to pay.

But I think the frame of this complaint furnishes an answer to the point thus raised. The prayer for judgment is solely to make the separate estate of the wife responsible. It does not ask relief against the husband at all.

Under the 275th section of the Code, a judgment for want of an answer could only have been granted against the property of the wife—none against the husband personally. I think the case upon a demurrer may be treated in the same manner; and then it is that the wife with the husband, for conformity, demurs that no cause of action is made against her property.

I may notice that the amendment of 1857 to the 114th section of the Code, dispenses with the necessity of a next friend in every case.

Demurrer allowed—judgment for defendants, with costs.