## Reagan Estate

*Samuel J. Feigus* and *Reilly & Cohen*, for petitioners.
*Phillips, Waggoner & Board*, for respondents.

MATTHEWS, P. J., November 24, 1950.—This is a proceeding in partition. The petition was presented July 17, 1950, and a citation awarded to show cause why an inquest in partition of the real estate described therein should not be granted. An answer in the nature of a demurrer raising questions of law was filed and the matter is now before us on petition and answer. For a better understanding of the problems involved, we will repeat or copy here the material admitted facts, substantially as averred in the petition.

### Statement of Admitted Facts

1. Patrick Reagan, late of Uniontown, Fayette County, Pa., died June 20, 1917, having first made his last will and testament dated January 31, 1917, with codicil dated June 13, 1917, and duly probated in the Register's Office of Fayette County, Pa., on July 20, 1917, and of record in Will Book 20, page 12, full and complete copies of which will and codicil are attached to the petition for partition.

2. John F. Reagan, late of Uniontown, Fayette County, Pa., died July 5, 1946, having first made his last will and testament dated March 13, 1940, duly probated in the Register's Office of Fayette County, Pa., on July 15, 1946, and of record in Will Book 39, page 465, a full and complete copy of which will is attached to the petition for partition.

3. Patrick Reagan and his son, John F. Reagan, each died seized of an undivided one-half interest in all those two certain contiguous pieces or parcels of land situate in the City of Uniontown, Fayette County, and State of Pennsylvania, fronting 48½ feet on the south

side of Main Street and extending back of equal width 150 feet to South Street, upon which is erected a large four-story brick hotel building, known as the Exchange Hotel, being the same premises conveyed to John F. Reagan and Patrick Reagan by deed of George F. Titlow and wife, dated September 18, 1914, and recorded in Deed Book 345, page 14. In addition to the undivided one-half interest acquired by the above deed, John F. Reagan also died seized of an undivided 7/104ths interest in the real estate acquired under the will of his father, Patrick Reagan, as hereinafter set forth.

4. Patrick Reagan bequeathed and devised all of his property, real, personal and mixed, to his wife, Mary P. Reagan, for and during the period of her natural life. Mary P. Reagan died April 8, 1921.

5. Under subdivision 2 of the third paragraph of his will, Patrick Reagan provides as follows:

"2—To my daughter, Mary Ann Reagan, now Wilkinson, in trust nevertheless, for and during the period of her natural life, and after her death to her husband, George W. Wilkinson, so long as he remains unmarried, and after his death or remarriage, to the remainder of my children, share and share alike, Thirty-five Thousand ($35,000.00) Dollars of my interest in the Exchange Hotel, situate on East Main Street, in the Borough of Uniontown, Fayette County, Pennsylvania, subject, however, to the following restrictions:

"(a) That the same shall not be disposed of in any way until after the death of my said daughter and the death or remarriage of her said husband.

"(b) in case of *depretiation* or increase in the value of said property, then the interest of my daughter to increase or *depretiate* accordingly.

"(c) I direct that my executors hereinafter named to collect the rents, issues and profits from said interest in the Exchange Hotel and pay the same to my said daughter to be applied by her in maintenance of herself

and husband. I also give and devise unto my daughter, Mary Ann Wilkinson, my house and household furniture situate at No. 19 Pennsylvania Avenue, Uniontown, Fayette County, Pennsylvania."

6. Under subdivision 3 of the third paragraph of his will, Patrick Reagan provides as follows:

"To the Citizens Title & Trust Company, its successors, in trust nevertheless, the sum of Thirty Thousand ($30,000.00) Dollars of my interest in the Exchange Hotel, situate on East Main Street, in the Borough of Uniontown, Fayette County, Pennsylvania, to pay over the net income thereof in quarterly or other convenient payments to my son, James B. Reagan, for and during the full term of his natural life, free and clear of his debts, contracts, engagements, etc., and from and after his decease, the same to be paid to his wife, for the support of herself and children, so long as she remains his widow, and at the time of her death or remarriage, I direct that my son's interest in said Hotel be sold, if advisable, either at public or private sale, and that the proceeds of the sale be divided among so many of his children as then lives, share and share alike, subject however, to the following restriction, that the money shall not be distributed to and among the children, until the youngest child becomes of age."

7. Mary Ann Wilkinson died January 13, 1931, and her husband, George W. Wilkinson, died on January 9, 1932. The remainder of the children of Patrick Reagan, deceased, were Kate Maher, Margaret Davis, James B. Reagan and John F. Reagan. Kate Maher died August 28, 1944, having first made her last will and testament dated August 24, 1944, and duly probated in the Register's Office of Fayette County, Pa., on September 8, 1944, and of record in Will Book 38, page 55, wherein she devised, inter alia, all of her interest in the above-described real estate to her daughter, Mary Oliver

Maher. Mary Oliver Maher, single woman, conveyed all of her interest in and to the real estate to Charles J. Maher by deed dated October 20, 1944, and recorded in Deed Book 600, page 284.

John F. Reagan died July 5, 1946, testate. Margaret Davis and James B. Reagan are still living.

8. On February 26, 1932, at February term, 1932, no. 68, John F. Reagan was appointed trustee to succeed the Citizens Title and Trust Company for the interest or share of James B. Reagan and his family as set forth under subdivision 3 of the third paragraph of the will of Patrick Reagan, deceased. On December 31, 1946, at December term, 1946, no. 91, Fidelity Trust Company, Pittsburgh, Pa., was appointed trustee of this interest, the appointment having been made to succeed John F. Reagan, who died July 5, 1946, as above stated. Ellen Reagan, wife of James B. Reagan, and the following children are living: Mary Hart, Margaret Stull, Ellen Hughes, Sheridan Reagan, Mildred Becker, Theresa Piper and Louise Ryland.

9. Under the fifth paragraph of his will John F. Reagan devised all of the residue of his estate to his wife, Florence G. Reagan, and his son, Charles P. Reagan, in trust, however, for the uses and purposes therein expressed and to have and to hold for and during the period of the natural life of his wife. John F. Reagan provided that his wife, Florence G. Reagan, should have one half of the net income from the trust properties and that each of his children, viz., Charles P. Reagan, Florence Marie Reagan, now Florence Marie Altman; John George Reagan, Elizabeth M. Reagan and Clare Reagan, now Clare Kalman, should have one tenth thereof. Testator provided that at the death of his wife each separate piece or parcel of real estate or interest constituting this trust should be conveyed to or vested in a certain named child including,

inter alia, a provision that his son, Charles P. Reagan, should have the interest in the Exchange Hotel Building.

By agreement dated September 30, 1946, and recorded in the Recorder's Office of Fayette County on the same day in Agreement Book 95, page 54, a copy of which agreement is attached to the petition for partition, the widow and children of John F. Reagan, being all of the beneficiaries under his will, modified and amended certain provisions thereof, the effect of which is that all of the five children take equal undivided interests in all of the real estate constituting the trust under this paragraph of his will. The widow and children of John F. Reagan are all living and all are of full age.

10. Florence G. Reagan and Charles P. Reagan, who were appointed trustees by John F. Reagan under the fifth paragraph of his will, renounced their right to act and on March 29, 1947, at March term, 1947, no. 125, Fidelity Trust Company, Pittsburgh, Pa., was appointed trustee to succeed them and the trust company accepted the duties of the trust on August 1, 1947, and is still continuing to act as such trustee.

11. There are no liens or charges against the real estate or any of the parties interested therein, nor are there any rents due or owing by any of the parties.

12. Petitioner in this proceeding is Charles J. Maher, who acquired such interest as he may possess by deed from his daughter, Mary Oliver Maher, now Mary Bell, the sole devisee under the will of Kate Maher, deceased, as above stated.

## Discussion

Two separate answers were filed to the citation to show cause why an inquest in partition should not be granted, both by the Fidelity Trust Company, one as trustee for James B. Reagan, his wife and children, and

the other as trustee for the widow and children of John F. Reagan, deceased. The principal objections to partition as stated in the answers may be summarized under two general headings, first, that petitioner does not have any interest in the land sought to be partitioned, but only an interest in a charge of a sum of money thereon, and second, that even if the interest of petitioner should be construed as an interest in land, the orphans' court does not have jurisdiction.

The first question involves the construction of the will of Patrick Reagan, deceased. He died on June 20, 1917, having given his wife a life interest in all of his property, but she died on April 8, 1921, a little less than four years later. In 1914 he and his son, John F. Reagan, acquired a piece of real estate in Uniontown, commonly known as the Exchange Hotel property. Patrick Reagan died seized of the undivided one-half interest in this property and disposed of the same under the provisions of his will quoted at the fifth and sixth paragraphs of the statement of admitted facts. It will be noted that he says: "To my daughter, Mary Ann Reagan, now Wilkinson, in trust nevertheless, for and during the period of her natural life, and after her death to her husband, George W. Wilkinson, so long as he remains unmarried, and after his death or remarriage to the remainder of my children, share and share alike, Thirty-five Thousand ($35,000.00) Dollars of my interest in the Exchange Hotel, situate on East Main Street, in the Borough of Uniontown, Fayette County, Pennsylvania," subject, however, to the restrictions set forth in the will.

It will also be noted that he makes a somewhat similar provision for his son, James B. Reagan and his son's wife and their children by setting up in trust the sum of $30,000 of his interest in the Exchange Hotel property. Testator made no other disposition of any in-

terest in this property except, however, that he made all of his children residuary devisees under the codicil to his will. We are of the opinion that testator intended that his daughter, Mary Ann Wilkinson and her husband, and his son, James B. Reagan, his wife and children, should take interests in the real estate in the manner expressed in the will and that he did not intend to create charges on the land for their benefit. A study of the entire will of testator leads very definitely to this conclusion. This is one of the class of cases where the elementary rule that a will should be construed from its "four corners" should be applied: Fox's Appeal, 99 Pa. 382, 386; Brennan's Estate, 324 Pa. 410, 414; March Estate, 357 Pa. 216, 218; Mulert Estate, 360 Pa. 356, 359. Testator had five children, two sons and three daughters, all of whom survived him. After providing for the burial of his body and the erection of a monument, the care and maintenance of the graves of himself and wife, and the gift to his wife for life, he set up in his will provisions for all of his children at her death. In addition to the undivided one-half interest in the Exchange Hotel property, he was the owner of an undivided 15/23 interest in other property known as the Lafayette Hotel, which property is not here involved but which is involved in a companion proceeding at June term, 1950, no. 56, and in which proceeding similar questions have been raised and in which we have entered an adjudication this day. Most of what is said here is a repetition of what is stated in that adjudication.

With respect to the Lafayette Hotel property the will of testator provides:

"To my daughter, Margaret Davis, for and during the period of her natural life, and after her death, to her husband, Sylvester Davis, so long as he remains unmarried and after his death or re-marriage, to so

many of their children as then lives, share and share alike, the sum of Thirty Thousand ($30,000.00) Dollars of my interest in the Lafayette Hotel situate on West Main Street in the Borough of Uniontown, Fayette County, Pennsylvania. This devise is subject to the following restriction: that the same shall not be disposed of in any way for a period of twenty years."

He also makes a similar provision for his daughter, Kate Maher, her husband and their surviving children and in the same amount of $30,000 and devises "All the rest of my right, title and interest in the Lafayette Hotel" to his son, John F. Reagan, "to be taken in connection with the note or deed which he holds against said Hotel, making in all, his interest about Fifty-five Thousand ($55,000.00) Dollars." It is contended in the companion proceeding with respect to this property that the effect of these provisions of the will was to give his son, John F. Reagan, all of the undivided 15/23 interest of testator, subject however, to two separate charges of $30,000 each, the first for Margaret Davis, her husband and their surviving children, and the second for Kate Maher, her husband and their surviving children, but we held that interests in the real estate were devised.

It is apparent that the most valuable assets of testator were his undivided interest in the two hotel properties. It was his desire to divide these interests among all of his children, but for reasons best known to himself, he did not give to each one of them an interest in fee. His son, John, was the only one who took such an interest. Testator placed valuations on his respective undivided interests in these properties and used them for the purpose of designating the proportionate value he desired each devisee to have. It is evident that he valued his one-half interest in the Exchange Hotel property at $65,000, and gave $35,000 of

this interest to his daughter, Mary Ann Wilkinson, for life and then to her husband for life or so long as he remained unmarried, and at his death or remarriage to testator's remaining children. The Wilkinsons had no children. The remaining $30,000 interest in this property he set up in trust for his son, James B. Reagan, and his family as expressed in the will. It is quite clear that testator valued his undivided 15/23 interest in the Lafayette Hotel property at $75,000, although he does not mention that specific sum. He gave $30,000 of this interest to his daughter, Margaret Davis, for life, a like amount to his daughter, Kate Maher, for life, and the remainder in fee to his son, John F. Reagan, which made his interest "about $55,000.00". An interest equivalent to $15,000 on a valuation of $115,000 for the whole of the property passed to the son, John, under the will. Testator had previously made a deed to his son, John, for an undivided 8/23 interest.

By looking at the "four corners" of this will we find other statements or expressions indicating an intent to devise interests in real estate and not to create charges thereon. With respect to the interest of $35,000 in the Exchange Hotel devised to his daughter, Mary Ann Wilkinson, for life, testator says:

"I direct that my executors hereinafter named to collect the rents, issues and profits from said interest in the Exchange Hotel and pay the same to my said daughter to be applied by her in the maintenance of herself and husband."

Rent, as the term is ordinarily used, is an incident to the relationship of landlord and tenant. It is the return made by one who occupies real estate under an express or implied contract: Commonwealth v. Contner, 18 Pa. 439, 447. "It is defined to be a certain profit issuing yearly out of lands and tenements corporeal"; 2 Blackstone 41. But this definition has been held to be

too narrow and restricted and it may include also the consideration for the use of personalty as well: Mickle v. Miles, 31 Pa. 20. In any event it is entirely unlikely that testator would have used the terms "rent, issues and profits" and directed his executors to collect the same if he had not intended to devise an interest in real estate. If he had intended to create a charge, the terms "interest and income" would have been natural and more appropriate. True it is, however, that in the very next paragraph of his will with respect to the trust set up for his son, James B. Reagan, testator directs the trustee to pay all the "net income," but he directs that at the death of his son and his son's wife, that this "interest in said hotel be sold, if advisable, either at public or private sale". It would seem unlikely that testator intended to direct a sale of a charge or lien. Then, again, he refers to the $30,000 interest in the Lafayette Hotel property given to his daughter, Margaret Davis, for life as a devise. He says: "This devise is subject to the following restriction; that the same shall not be disposed of in any way for a period of twenty years." "The word 'devise' denotes a gift of real estate or an interest therein": Williamson's Estate, 302 Pa. 462, 467; Fleck v. Harmstad et al., 304 Pa. 302, 308. In regard to the $35,000 interest in the Exchange Hotel property given to his daughter, Mary Ann Wilkinson, for life, and also in regard to the $30,000 interest in the Lafayette Hotel property given to his daughter, Kate Maher, for life, it will be observed that testator provides that in case of depreciation or increase in value of the properties, the interests of the respective daughters shall depreciate or increase accordingly. We do not believe that testator intended to create charges or liens at all and it is still less likely that he intended to create fluctuating ones. It will be noted, however, that there are no such clauses with respect to the interests of the

son, James B. Reagan, or the daughter, Margaret Davis. It should also be noted that when testator gave to his son, John F. Reagan, "all the rest" of his interest in the Lafayette Hotel property, he must have had in mind that he had already disposed of a part of it. What he had in mind by referring to the "note or deed" already held by his son is not clearly disclosed. The fact is that the son held a deed dated in 1912 and not a note, but the deed was not recorded until 1917, after the date of the will. Testator refers to the total interest of the son as "about $55,000.00" but the use of the word "about" does not, in our opinion, show an intention to devise a variable or undetermined interest. It is true that "about" means approximately or approaching exactness, but unless the will is read and interpreted as if the word "about" were eliminated, this clause becomes meaningless. The interest of the son must be exactly $55,000 and that of the two daughters must be exactly $30,000 each. While the construction of a will is favored which will render each word operative, yet words or phrases will be rejected when they have the effect of subverting or defeating testator's whole testamentary scheme: March Estate, 357 Pa. 216, 219.

The provisions of the will negative any intention of testator to create charges on his real estate for the benefit of his children. There is no personal obligation on anyone to pay the various sums mentioned and he created no fund for that purpose: Knaub's Estate, 144 Pa. 322; Shenk, admr., v. Shenk, 150 Pa. 521. We conclude that the various sums mentioned were employed by testator to indicate the fractional interests devised to each child and that they do not constitute legacies charged upon the real estate: 4 Page on Wills, p. 237, sec. 1451.

While not averred in the petition for partition, John F. Reagan's executor and trustee has assumed that he

died seized, of an undivided 55/115 interest in the Lafayette Hotel property and an undivided 59/104 interest in the Exchange Hotel property and the Pennsylvania transfer inheritance tax was assessed and paid on those interests. Presumably, the Federal estate tax was assessed and paid on like interests. If Patrick Reagan valued his undivided one-half interest in the Exchange Hotel property at $65,000, as we think he did, then, of course, the value of the whole was $130,000 and the interest devised to the Wilkinsons for life was an undivided 35/130 interest. There were four remaining children of Patrick Reagan, deceased, and therefore, each child took ¼ of 35/130, or 7/104. Then, too, while it is not averred in the petition we are advised that the net rents from these properties have been divided on the basis indicated. In other words, the parties themselves have interpreted the will of Patrick Reagan, deceased, as hereinbefore expressed. While the understanding of a devisee as to the nature of an estate given to him is inadmissible in the construction of a will, yet where the parties have acquiesced in a certain construction over a period of years, that fact ought to be considered by the court in reaching a legal interpretation of the will: 4 Page on Wills, p. 657, sec. 1624.

After consideration of this entire will, we are convinced that the testamentary scheme of testator was to divide his interests in these hotel properties among his children and that he used the specified sums mentioned, rather than complicated fractions, to designate the interest devised to each. We hold that he intended to devise and he did devise interests in real estate and not charges thereon.

The jurisdiction of the orphan's court to make partition is challenged, and, for the record, we will repeat here what we said in that connection in the companion proceeding at June term, 1950, no. 56. While the Con-

stitution provides for the establishment of orphans' courts, they are not courts of general jurisdiction and have only such powers as are conferred by statute: Cutler's Estate, 225 Pa. 167, 169; Watson's Estate, 314 Pa. 179, 181; Peterson's Estate, 146 Pa. Superior Ct. 87; Brereton Estate, 355 Pa. 45, 55. Therefore, unless the power to make partition under the facts here presented is found in some statute, the orphans' court does not possess it.

The jurisdiction of the orphans' court to make partition has been greatly enlarged. The first legislation on the subject was section 22 of the Act of April 19, 1794, 3 Sm. L. 143, wherein the orphans' court was given jurisdiction over the partition of land of an intestate, but it had no jurisdiction in case of testacy or in any other case. The provisions of this act and all other intervening legislation were consolidated in sections 36 to 46, both inclusive, of the Act of March 29, 1832, P. L. 190, in which last mentioned act the limitation to cases of intestacy was continued. And the jurisdiction of the orphans' court in such cases was exclusive: Rex v. Rex, 3 S. & R. 533, 534 (1817) ; Thomas v. Simpson, 3 Pa. 60 (1846). But by the first section of the Act of April 21, 1846, P. L. 426, it was provided: "That nothing contained in the act, entitled 'An Act relating to orphans' courts', passed on the twenty-ninth day of March, eighteen hundred and thirty-two, shall be construed to give to the orphans' courts of this commonwealth, exclusive jurisdiction in the partition and valuation of the real estate of intestates, or to prevent any of the parties interested in such real estates, from proceeding, by action of partition, in the other courts of this commonwealth, which have jurisdiction of the action of partition", and thus the exclusive jurisdiction of the orphans' court in cases of intestacy was taken away. The fourth section of the Act of April 13, 1840, P. L. 319, provides that the jurisdiction of the orphans'

court in the partition and valuation of the real estate of decedents "shall extend to all cases of testacy wherein the parties interested, or any of them are minors, or the course of descent is not altered by the provisions of the last will and testament of the decedent." It will be noted that the jurisdiction under this act arose when a minor was a cotenant, but by the tenth section of the Act of April 10, 1849, P. L. 591, the jurisdiction was extended "to all cases of testacy wherein the whole or a part of the real estate of the decedent may be devised to two or more children." All distinction between cases of intestacy and cases of testacy was eliminated by the Act of May 9, 1889, P. L. 146, which provides: "That the jurisdiction of the several orphans' courts of this Commonwealth, in the partition and valuation of the real estates of decedents, shall extend to all cases of testacy, without respect to the minority of the parties, their relationship to the testator, or the fact of a widow's election not to take under the will."

Under the Act of March 29, 1832, P. L. 190, the orphans' court did not have jurisdiction to make partition of undivided interests in land, either among the heirs themselves or between the heirs and the owner of the remaining undivided interest: Feather v. Strohoecker, 3 P. & W. 505, Romig's Appeal, 8 Watts 415. This situation was corrected by the Act of March 13, 1847, P. L. 319, wherein it was provided: "That the jurisdiction of the several orphans' courts of this commonwealth, in the partition and valuation of real estate, shall extend to any undivided interest, in fee simple, in any lands or tenements of which any person has died or shall hereafter die seized or possessed, as tenant in common or joint owner, with any other person or persons, as fully as if such decedent were solely seized or possessed thereof at the time of his or her

death." But this act affected only the undivided interest of the deceased cotenant and provided that such interest could not be divided but the same should be appraised as one purpart. It was also held that under this legislation the orphans' court had no jurisdiction to decree partition in two or more estates in one proceeding where the land was held by the same persons (Snyder's Estate, 36 Pa. 166), but this situation was changed by the Act of February 26, 1869, P. L. 4, which provided: "hereafter several undivided interests in any premises, derived from different ancestors, by descent or devise, may be parted in one proceeding in the orphans' court."

After 1832 numerous other amendatory and supplementary statutes were enacted from time to time, particularly with respect to procedural matters, but, in the main, the foregoing was the statutory situation when the Orphans' Court Partition Act of June 7, 1917, P. L. 337, was enacted, which act repealed all prior legislation in regard to partition in that court and subdivision (a) of the first section of the act (20 PS §1181) is as follows:

"The orphans' court of each county of this commonwealth shall have jurisdiction, but not exclusive jurisdiction, in the partition and valuation of real estate within the county of any decedent, testate or intestate, whether such decedent was at the time of his death seized or possessed of such real estate solely or as tenant in common or joint owner with any other person or persons, and whether or not the surviving spouse of such decedent shall elect to take against his or her will, and notwithstanding there may be a limitation of an estate or interest in the premises, or some part thereof, to a person or persons not in existence; and several undivided interests in any premises derived from different ancestors by descent or devise may be parted or valued in one proceeding in said court: Provided, That

such court shall not have such jurisdiction during the continuance of any life estate in the whole of such real estate."

The above quoted act did not authorize partition in the orphans' court between the heirs of a deceased cotenant and the surviving cotenants, Wilhelm's Estate, 6 Dist. R 236; Stockdale's Estate, 29 Dist. R. 1013, Kowala's Estate, 21 D. & C. 77, and the jurisdiction of the court was further extended to take care of this situation by the amendatory Act of June 24, 1939, P. L. 707, in which the following words were inserted after the word devise: "or the interests of the heirs of a deceased cotenant and of the surviving cotenant."

It will be observed that the last clause of the first section of the Act of 1917 above quoted provides that the orphans' court shall not have jurisdiction "during the continuance of any life estate in the whole of such real estate". Partition is a possessory action and this provision was simply declaratory of the existing law: Donaghy's Estate, 152 Pa. 92; Lee's Estate, 13 Phila. 291; Wolfe's Estate, 22 Pa. C. C. 340.

The second section of the Act of 1917, as amended by the Act of April 27, 1927, P. L. 449, 20 PS §1201, is as follows:

"The jurisdiction of the orphans' court under this act shall be exercised on the petition of the surviving spouse of the decedent, of any heir of the decedent in a case of intestacy, or of any devisee having an interest in the real estate in question in a case of testacy, whether the interest of such person be vested in possession or in remainder, or of any person having a life interest in an undivided share of such real estate, or of any alienee, heir, surviving spouse, or devisee of any party in interest. If the party be a weak-minded person for whom a guardian has been appointed, or a minor,

lunatic, or habitual drunkard, the petition shall be filed by the guardian or committee of such party."

Whatever may have been the prior restrictions and limitations on the power of the orphans' court to make partition of real estate, it would seem that these statutes are now sufficiently broad and comprehensive to apply to almost all cases of both testacy and intestacy.

On February 26, 1932, John F. Reagan was appointed trustee to succeed the Citizens Title and Trust Company for the interest of James B. Reagan and his family, as set forth under subdivision 3 of the third paragraph of the will of Patrick Reagan, deceased, but it is averred in the petition that upon the death of John F. Reagan on July 5, 1946, no appointment was made to succeed him. Counsel for petitioner now admits that this was in error and that on December 31, 1946, the Fidelity Trust Company was appointed trustee, as set forth in its answer. At the time the petition was presented and citation awarded we appointed the Fidelity Trust Company as trustee ad litem for the unborn children of James B. Reagan, but it now appears that such appointment was unnecessary and that the trust company in virtue of its prior appointment, represents all beneficiaries of this trust, whether born or unborn. The appointment of the trustee ad litem may be regarded as revoked.

We have hereinabove held that the trustee took an undivided 30/130 interest in the Exchange Hotel property and not merely a charge or a lien for $30,000. If such is the case, we understand the contention of the trustee to be that neither the orphans' court nor any other court has jurisdiction to award partition for the reason that under the provisions of the will an active trust was created. This point might be well taken if testator had owned all of the Exchange Hotel property, had devised all of it under these provisions of his will

and the petition for partition had been by a cestui que trust: Hutchinson's Appeal, 82 Pa. 509, 512; Clark's Estate, 134 Pa. 140, 142; Johnson v. Gaul, 228 Pa. 75, 77; Owens v. Naughton, 23 Pa. Superior Ct. 639, 642; Tombs Estate, 155 Pa. Superior Ct. 605, 612. The title to this undivided interest is in the trustee and not in the beneficiaries or any of them. The trustee has active duties to perform in collecting the rents and paying the net income to the life tenants. The trust continues for the life of James B. Reagan and that of his wife or so long as she remains his widow. This interest in the property or the proceeds of the sale of it then goes to so many of the children of James B. Reagan as "then survives". It is clear that this testamentary provision would prevent either of the life tenants or any of the children from maintaining partition, but this does not mean that the owners of other undivided interests in the same real estate may not institute such proceeding and make the trustee a party. It is not difficult to imagine a set of facts and circumstances which would make it advisable for the trustee to institute partition.

"Partition is a right much favored, upon the ground that it not only secures peace, but promotes industry and enterprise. The rule of the civil as of the common law that no one should be compelled to hold property in common with another grew out of a purpose to prevent strife and disagreement. Additional reasons are found, however, in the more modern policy of facilitating the transmission of titles, and in the inconvenience of joint holding. Partition proceedings enable those who own property as joint tenants, coparceners, or tenants in common, to put an end to the tenancy so as to vest in each a sole estate in specific property or an allotment of the lands or tenements. It contemplates an absolute severance of the indi-

vidual interest of each joint owner, and after partition, each has the right to enjoy his estate without supervision, let, or hindrance from the other. Unless this can be accomplished, then the joint estate ought to be sold, and the proceeds divided. Courts should be, and are, adverse to any rule which will compel unwilling persons to use their property in common": 40 Am. Jur. Partition, §4. The above-quoted text is fully supported in Caldwell et al. v. Snyder et al., 178 Pa. 420, 422.

Testator, Patrick Reagan, created no trust and imposed no restrictions on the interest in this property, devised under subdivision 2 of the third paragraph of his will, except to provide that it should not be disposed of in any way until after the death of his daughter, Mary Ann Wilkinson, and the death or remarriage of her husband. These events have occurred. The remaindermen are the remaining children of testator and petitioner is the alienee of the devisee of one of them. Are these remaindermen of this undivided interest to be denied partition because another undivided interest is held by a trustee under an active trust? We think not. The right of partition is an incident of unrestricted ownership. Certainly a tenant in common could not set up an active trust of his interest in the land, either by deed or by will, and thus prevent his cotenant from maintaining partition. The views here expressed on this branch of the case are fully sustained by Kenyon v. Davis, 219 Pa. 585, 589.

The demurrer avers that the interest of petitioner not having been acquired under the will of Patrick Reagan, deceased, but by purchase, is not sufficient to give the court jurisdiction. This contention must be rejected for the reason that the alienee of an heir or devisee is expressly given such right by the statute. It is also averred that partition should be denied for

the reason that it would work a great injustice upon James B. Reagan and his family in the event of a sale of the real estate, since he would be unable to purchase the same or protect his interest. We believe it to be well understood, without citation of authority or further discussion, that the right to partition is not based upon the advantages or disadvantages to the parties in interest.

We have hereinbefore mentioned a companion proceeding involving the Lafayette Hotel property. The question has been raised, although not set forth in the answer and not pressed, as to whether both properties should not have been included in a single proceeding. We think that they should not have been. It would have been impracticable. Of course, in intestate estates where all of the parties have like interests in all of the real estate, it has been held that all of it must be included in one proceeding. There cannot be inquisitions upon it by parcels: Stickles v. Oviatt, 212 Pa. 219, 221, Gilpin v. Brown, 268 Pa. 398, 399. But where, as here, the interest of many of the parties in each of the pieces of real estate are entirely different, it would not be practicable to include both in one proceeding: Volkwein v. Volkwein, 332 Pa. 120, 122.

It becomes our duty to determine the parties and to define their interests (Becker Estate, 352 Pa. 452, 454; Cray Estate, 353 Pa. 25, 26), and we will do so in the decree.

## Conclusions of Law

1. Under subdivision 2 of the third paragraph of the will of Patrick Reagan, deceased, the persons therein named or referred to acquired an undivided 35/130 interest in the real estate described, and not merely a charge or lien of $35,000 thereon.

2. Under subdivision 3 of the third paragraph of the will of Patrick Reagan, deceased, the trustee for,

the persons therein named or referred to acquired an undivided 30/130 interest in the real estate therein described, and not merely a charge or lien of $30,000 thereon.

3. The orphans' court has jurisdiction to partition all of the real estate described in the petition, including the undivided interest therein of which John F. Reagan, cotenant of Patrick Reagan, died seized.

### Decree

And now, November 24, 1950, upon and after consideration of the petition for partition, answer thereto and argument of counsel, it is ordered, adjudged and decreed as follows:

1. That under subdivision 2 of the third paragraph of the will of Patrick Reagan, deceased, the persons therein named or referred to acquired an undivided 35/130 interest in the real estate therein described, and not merely a charge or lien of $35,000 thereon.

2. That under subdivision 3 of the third paragraph of the will of Patrick Reagan, deceased, the trustee for the persons therein named or referred to acquired an undivided 30/130 interest in the real estate therein described, and not merely a charge or lien of $30,000 thereon.

3. That the orphans' court has jurisdiction to partition all of the real estate described in the petition, including the undivided interest therein of which John F. Reagan, cotenant of Patrick Reagan, died seized.

4. That all of the parties interested in the real estate and their respective interests are as follows: (1) Charles J. Maher, an undivided 7/104 interest; (2) Margaret Davis, an undivided 7/104 interest; (3) James B. Reagan, an undivided 7/104 interest; (4) Fidelity Trust Company, Pittsburgh, Pa., an undivided 30/130 interest, in trust for James B. Reagan, his wife and their children; (5) Fidelity Trust Com-

pany, Pittsburgh, Pa., an undivided 59/104 interest, in trust for the widow and children of John F. Reagan, deceased, viz., Florence G. Reagan, Charles P. Reagan, Florence Marie Altman, John George Reagan, Elizabeth M. Reagan and Clare Kalman.

5. That it appearing that service of the citation has been made on all of the parties in interest, an inquest to make partition of the real estate described in the petition is hereby awarded, returnable Monday, January 15, 1951.